FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 27 2015

for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Aug. 27 2015

Ronald R. Carpenter
Supreme Court Clerk



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding | ) | |
| | ) | No. 201,352-0 |
| Against KATHRYN B. ABELE, | ) | |
| | ) | En Banc |
| Attorney at Law. | ) | |
| | ) | Filed ___AUG 27 2015___. |
| | ) | |

WIGGINS, J.—Following a four-day disciplinary hearing, hearing officer William S. Bailey found that attorney Kathryn B. Abele committed two counts of misconduct. He recommended that Abele be suspended for one year, that she complete an evaluation to determine her fitness to practice law, and that she pay all litigation costs. The Washington State Bar Association (WSBA) Disciplinary Board (Board) unanimously adopted the recommendations.

Abele appealed, arguing that 11 of the 48 findings of fact were not supported by substantial evidence and that suspension is not the appropriate sanction. We hold that substantial evidence supports the hearing officer's findings of fact and that his conclusions of law are correct. The record supports the finding of three aggravating factors and only one mitigating factor. We therefore accept the Board's recommendation and suspend Abele from the practice of law for one year.

FACTS

Abele was admitted to the practice of law in Washington in November 2002. At all times relevant to this case she practiced family law as a solo practitioner.

This proceeding arises out of two separate matters charged in two separate counts of misconduct. The first count charged Abele with violating several rules of professional conduct for behavior for which she was found in contempt of court in September 2011. The second count charged Abele with knowingly making a false or misleading report to the Seattle Police Department (SPD) in May 2011. Following a four-day hearing that included testimony from 15 witnesses—9 witnesses for the WSBA, Abele's videotaped deposition, and 5 witnesses on Abele's behalf—as well as audio and video recordings of the incidents giving rise to each count, the hearing officer made 48 detailed findings of fact. Abele assigns error to 11 of these facts; the remaining findings are treated as verities on appeal. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007).

I.   Factual History

This factual summary is based entirely on unchallenged findings—Abele has not assigned error to any the findings used for this factual history.

A. *Count I: Contempt in Judge Farris's Court*

In 2011, Abele represented the father in a three-way child custody battle in Snohomish County Superior Court. Ms. Janal Rich and Mr. Richard Jones represented the other parties, and Judge Anita Farris presided over the matter. The trial lasted 13 days; the attorneys testified that it was unusual, complex, and contentious.

Throughout the trial, Abele was repeatedly admonished for interrupting the court and other counsel. She slammed objects on the table and made loud comments when Judge Farris ruled against her. Though Abele's comments and actions were distracting to opposing counsel, she did not stop when the court instructed her to do so. Instead, Abele would falsely respond, "I did not say anything" and continue to engage in disruptive behavior.[1]

The court held a posttrial hearing in August 2011 to finalize the parenting plan. Abele made it clear that she wanted the case resolved that day because she intended to immediately appeal the court's decision. The court told Abele that it would not be possible to conclude that day and that she would not sign Abele's proposed findings. Abele became angry and said to Judge Farris, "You've got to leave now. We have to take a break now." Judge Farris, inferring from the statement that Abele was going to "blow up," called for a recess. After Judge Farris left the bench, Abele made a loud screaming noise that could be heard in other rooms in the courthouse. Security was called, but Abele was not held in contempt for this outburst.[2]

On September 28, 2011, the court held another hearing to finalize the parenting plan. Abele and opposing attorney Rich were present in the courtroom, with Jones present by telephone. Abele and Rich loudly discussed a discrepancy in the parenting plan while Judge Farris was speaking. Frustrated with Abele's interruption, Judge

---

[1] Abele's disruptive behavior was not limited to the courtroom. Abele's calls to Ms. Rich's staff were abusive, requiring Ms. Rich to implement an office-wide policy of screening Abele's telephone calls. Abele also referred to the court's decisions as "wrong" or stupid" in front of opposing counsel and the court staff while the court was in recess.

[2] Though Judge Farris was not present and did not know the cause of the scream, testimony from attorney Jones and the court reporter supported Abele's assertion that the scream was a cry of pain rather than a cry of frustration or anger.

Farris attempted to make a record of her concerns, hoping to prevent further interruptions. But Abele repeatedly interrupted Judge Farris, even yelling to express her disagreement. When Judge Farris directed staff to summon security, Abele announced, "I'm going to jail. I'm going to jail," placing her hands over her head, crossed at the wrists as if being handcuffed. Abele walked out of the courtroom while court was still in session, causing the proceedings to come to a halt. Abele reentered the courtroom and announced, "I'm leaving. I'm out of here. . . . I'm abstaining completely. . . . Good-bye."

The court ordered security personnel to locate Abele and return her to the courtroom. When Marshal Patrick Miles located Abele, she informed Miles that she would not return. Miles and Sergeant David Hayes again informed Abele that Judge Farris ordered her back to the courtroom. Abele refused initially but ultimately returned to the courtroom.

On Abele's return, Judge Farris continued to make a record of Abele's behavior. Judge Farris stated that in the previous hearing Abele had made "loud noises that to me sounded like an animal being killed" and that "I have been in these courts for 30 years, 18 as a judge. I have never heard anything—I have never heard any lawyer make any kind of noise or do anything like that before." Abele again yelled at the judge, attributing her previous scream to a hip injury and claiming that her yelling was the result of a hearing disability. Judge Farris held Abele in contempt "based on your screaming, yelling, jumping up and down in my courtroom, stomping and then— stomping out and refusing to represent your client . . . ." Abele responded, "Your

Honor, I appreciate your lecture. Could you just tell me how much I have to pay in a fine so I can get rid of it and take care of it and resolve this issue with you?"

To purge her contempt, Judge Farris ordered Abele to make contact within 30 days with the Lawyer's Assistance Program (LAP) provided by the Washington State Bar Association. Abele refused repeatedly to contact LAP.

Abele's behavior continued to have a disruptive effect on the courthouse after the hearing concluded. Immediately after leaving the courtroom, Abele yelled, "[T]hat bitch!" Opposing counsel Ms. Rich was so shaken by Abele's behavior that she asked to be accompanied by security personnel while leaving the courthouse.

Despite her earlier refusals, Abele contacted LAP later in the day, timely purging her contempt.

### B. Count II: Knowingly Filing a False Police Report

Count II was based on Abele's conduct following her appearance before Commissioner James Kahan at the King County Courthouse in Seattle. Abele repeatedly left and reentered the courtroom. Commissioner Kahan requested additional security personnel because he believed that Abele was causing a disruption outside of his courtroom. Marshal Samuel Copeland was dispatched and served as standby backup, observing the proceedings from the back of the courtroom.

While Abele was outside the courtroom, Copeland heard a loud, agitated female voice in the hallway. He investigated, saw Abele in the hallway, and asked her to quiet down. This angered Abele: she extended her palm to Copeland, indicating that she didn't want to listen to him, told him that she was an attorney and she could talk however she wanted, and indicated that she didn't respect him. She also

suggested to her client that Copeland was harassing her. Copeland returned to the courtroom in an attempt to de-escalate the situation.

Later that day, Abele again encountered Copeland and yelled at him that she didn't respect him and that "someone should fart in [his] face." Copeland again walked away from Abele and toward Marshal Webb at the court's Fourth Avenue security checkpoint.

Abele followed Copeland to the checkpoint. Assuming that Webb was Copeland's supervisor, Abele complained to Webb about Copeland's behavior, waving her arms and speaking loudly and aggressively. Webb listened to Abele for a short time and asked her to go about her business, stating that he did not need to speak with her. Abele, angry at this dismissal, attempted to force her way between Copeland and Webb, yelling to the marshals, "[A]re you going to get out of my way?" Webb was seated on a stool, and Copeland was standing approximately one foot away from Webb. Instead of walking around the marshals in the six to eight feet of open hallway available to her, Abele pushed her way between them, contacting both police officers: her leg brushed against Webb's knee and she pushed against Copeland's body, causing him to move.

Abele immediately spun around, pointed, and yelled at Webb, accusing him of tripping her. She called 911, and SPD Officer James Ritter responded. Abele told Ritter that Webb had intentionally tripped her. She asserted that she had politely asked to go between the marshals because there was no room to go around them, that the marshals were rude to her, and that Webb laughed at her after his assault.

Officer Ritter interviewed Abele, Copeland, and Webb, and reviewed the security video. Ritter did not interview any other witnesses who were in the hallway during the incident. In reviewing the video, Ritter noted that Abele appeared to intentionally force herself into the 12 inch space between the two marshals, even though the remaining 8 feet of hallway was largely clear of visitors. He also noted that Abele had to turn sideways to pass between the marshals and that while "virtually every portion of her body appeared to make contact with the marshals, she did not appear to stumble or fall." Ritter observed, however, that the video camera angle did not show Webb's seat position or his legs. Ritter concluded that the video did not support Abele's version of events because the hallway was not congested, as Abele alleged; the video did not show her tripping, stumbling, or reacting to the marshals as she passed between them; and none of the potential witnesses or other individuals in the hallway approached him or suggested that there was a problem with the marshals' behavior. The internal investigation was ultimately dismissed, and Marshal Webb received a letter stating that Abele's charge was not substantiated.

II. Procedural History

The WSBA filed an amended formal complaint against Abele on March 21, 2013. Count I charged that Abele violated Rules of Professional Conduct (RPC) 3.4(c), 3.5(d), 8.4(d), and/or 8.4(j) on September 28, 2011 by engaging in the conduct that resulted in the court's finding her in contempt. Count II charged that Abele knowingly made a false and/or misleading statement to an officer of the SPD in violation of RPC 8.4(b), 8.4(c), and/or 8.4(d). The hearing took place November 12 to15, 2013. At the hearing, the WSBA presented testimony from nine witnesses, including Judge Farris,

7

her court reporter, opposing counsel present during the September 2011 conference, and the marshals and officer involved in the incident that gave rise to Abele's report to law enforcement. The hearing officer also considered portions of Abele's videotaped five-hour pretrial deposition, the audio recording of the September 28, 2011 hearing, and the security video showing the alleged tripping incident on May 16, 2011.

Hearing officer William S. Bailey issued his findings of fact (FF), conclusions of law, and hearing officer's recommendation on December 18, 2013. He found that Abele violated RPC 3.4(c), 3.5(d), 8.4(b), 8.4(c), 8.4(d), and 8.4(j).

Hearing officer Bailey recommended a one-year suspension with reinstatement conditioned on the successful completion of a fitness to practice evaluation. He also required Abele to pay all litigation costs and the costs of her fitness to practice evaluation. The Board unanimously affirmed after considering Abele's briefing and oral argument.

## ANALYSIS

### I.   Standard of Review

This court "bears the ultimate responsibility for lawyer discipline in Washington." *Marshall*, 160 Wn.2d at 329. Nevertheless, "we give considerable weight to the hearing officer's findings of fact." *Id.* at 329-30. "We also give great weight to the hearing officer's evaluation of the credibility and veracity of witnesses." *Id.* at 330. We treat unchallenged findings as verities on appeal. *Id.*

We accept challenged findings of fact as long as they are supported by substantial evidence. *Id.* "Substantial evidence" is "evidence sufficient 'to persuade a

fair-minded, rational person of the truth of a declared premise.'" *Id.* (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 209 n.2, 125 P.3d 954 (2006)). Substantial evidence can be direct evidence as well as circumstantial evidence. *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 61, 93 P.3d 166 (2004) (circumstantial evidence alone can constitute substantial evidence). The hearing officer is allowed to evaluate direct and circumstantial evidence, including evaluations about the credibility of the witnesses, and draw reasonable inferences from that evidence. *In re Disciplinary Proceeding Against Simmerly*, 174 Wn.2d 963, 988, 285 P.3d 838 (2012) (evaluations about witness credibility); *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 332-33, 67 P.3d 1086 (2003) (reasonable inferences).

An attorney challenging findings of fact must present argument as to why the specific findings are unsupported and cite to the record to support that argument. *Marshall*, 160 Wn.2d at 331 (citing *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 191, 117 P.3d 1134 (2005)). The attorney must do more than argue his or her version of the facts while ignoring the testimony of other witnesses. *Id.* We will not overturn findings based simply on an alternative explanation or versions of the facts previously rejected by the hearing officer and Board. *Id.*

We review challenged conclusions of law de novo. *In re Disciplinary Proceeding Against Jackson*, 180 Wn.2d 201, 220, 322 P.3d 795 (2014). The WSBA must prove misconduct by a clear preponderance of the evidence. *Id.*; ELC 10.14(b). This standard requires more proof than a simple preponderance but less than beyond a reasonable doubt. *Id.*

II.   Substantial Evidence Review

Abele's opening brief does not assign error to specific findings of fact by number as required by RAP 10.3(g) (appellate court only reviews "a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto").[3] We are not required to address findings not argued by Abele, and we can reject challenges that Abele fails to support with citations to the record. *See Marshall*, 160 Wn.2d at 331 (providing that a challenge is sufficient only if the attorney cites to the record or legal authority). Rather than making a true sufficiency argument, the majority of Abele's briefing merely reiterates the arguments that were considered and rejected by the hearing officer and the Board. Despite these critical deficiencies, we consider and ultimately reject Abele's appeal from the 11 challenged findings of fact listed in the appellant's reply brief.

Abele asks this court to reject the hearing officer's and unanimous Board's conclusion that Abele violated RPC 3.4(c), 3.5(d), 8.4(b), 8.4(c), 8.4(d), and 8.4(j). She generally argues that substantial evidence does not support the conclusion that she acted knowingly or intentionally as to either count. Though she acknowledges that she engaged in the conduct alleged in count I, she argues that she was provoked and that her conduct was negligent. As to count II, Abele argues that while substantial evidence may support the conclusion that she was not tripped, there is not substantial evidence that she subjectively knew that she was filing a false police report.

---

[3] When this was pointed out in the bar counsel's answering brief, Abele included in her reply brief a list of the findings of fact she challenges. But she fails to argue or to cite to the record to demonstrate that specific findings are unsupported.

Abele's mental state is an essential element in finding a violation of RPC 3.4(c) (knowingly), 3.5(d) (intentional), and 8.4(j) (willful). It is also an element of RCW 9A.76.175 (knowledge), the statute that gives rise to Abele's violation of RPC 8.4(b) and 8.4(c). A lawyer's state of mind is a factual issue, and we give great weight to the hearing officer's determination because the hearing officer is in the best position to make this determination. *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 744, 122 P.3d 710 (2005) (citing *In re Disciplinary Proceeding Against Anschell* 149 Wn.2d 484, 501, 69 P.3d 844 (2003)).

We hold that substantial evidence supports the hearing officer's factual determinations and that both counts are proved by a clear preponderance of the evidence.

A. Count I

We hold that count I was proved by a clear preponderance of the evidence. Substantial evidence supports the hearing officer's findings that Abele violated RPC 3.4(c),[4] 3.5(d),[5] 8.4(d),[6] and 8.4(j)[7] by engaging in conduct that resulted in a finding that she was in contempt of court. The undisputed findings of fact support the challenged findings. Abele's violations require an attorney's conduct to be either

---

[4] RPC 3.4(c), "Fairness to Opposing Party and Counsel," provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." (Formatting omitted.)

[5] RPC 3.5(d), "Impartiality and Decorum of the Tribunal," provides that "[a] lawyer shall not . . . engage in conduct intended to disrupt a tribunal." (Formatting omitted.)

[6] RPC 8.4(d), "Misconduct," provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." (Formatting omitted.)

[7] RPC 8.4(j) provides that "[i]t is professional misconduct for a lawyer to . . . willfully disobey or violate a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear." (Formatting omitted.)

knowing, intentional, or willful; the hearing officer specifically found that Abele's conduct was intentional, unprovoked, and unjustified.

Abele concedes that her conduct disrupted Judge Farris's court on September 28, 2011 but argues that she did not act knowingly or intentionally. Purportedly recognizing that her behavior was "wrong," her argument instead is that she did not intend to violate the RPCs. In her reply brief, Abele specifically challenges the portions of FF ¶¶ 6, 11, 28, and 29 stating that her conduct was intentional, unprovoked, and unjustified; she does not challenge that the conduct discussed in those findings occurred. She also does not make a true sufficiency argument: she argues that her outburst warrants admonition or reprimand rather than suspension and does not cite to the record to support her argument that specific findings are unsupported.[8] This mitigation argument reasserts many of the same arguments presented below and implores us to reach a different conclusion. We reject these arguments and hold that substantial evidence supports the hearing officer's findings.

Hearing officer Bailey heard testimony from five witnesses, including Judge Farris, on count I. He also reviewed numerous exhibits, including Judge Farris's written order finding Abele in contempt on September 30, 2011. "Contempt of court" requires intentional conduct. RCW 7.21.010. The order states:

> The Court further finds that this contempt was deliberate, willful, and in bad faith and that it was within [Abele's] control to cease her contemptuous behavior.

---

[8] It is not clear why Abele argues that admonition or a reprimand would be appropriate, aside from the fact that they are the lowest levels of discipline imposed. Contempt itself requires intentional conduct, and three of the rules that Abele has been charged with violating require knowing, intentional, or willful conduct. We hold that Abele violated these rules; in finding that she violated these RPCs we necessarily also hold that she did not do so negligently.

Abele did not appeal the finding of contempt or take exception to these findings. Rather, she complied with the court's order and her contempt was purged on October 6, 2011.

Substantial evidence supports the hearing officer's finding that Abele was deliberately disruptive during court proceedings, making it difficult for the other attorneys to examine witnesses. In addition to reviewing Judge Farris's unchallenged findings that Abele's behavior was "deliberate, willful, and in bad faith," the hearing officer considered Judge Farris's testimony that Abele behaved badly throughout the entire trial and that Abele was warned about this bad behavior. The hearing officer also heard evidence from opposing counsel that Abele frequently put them "off their game" by engaging in loud, disruptive conversations with her clients during witness examinations.

The unchallenged findings of fact lend further support to the hearing officer's challenged finding, FF ¶ 28, that Abele's actions were intentional. Abele's misbehavior began during the pretrial phase, occasioning Judge Farris's frequent admonitions and warnings. Abele consistently claimed that she had done nothing and referred to Judge Farris's rulings as "wrong" or "stupid" in front of opposing counsel and the court staff. Importantly, the hearing officer specifically rejected Abele's alternative explanations for this disruptive conduct, finding that "[Abele] was able to exercise complete control over the volume of her speech, getting loud or soft at will. . . . [She] got loud because she was angry, not because she did not know that she was being loud." Abele does not challenge this finding.

The hearing officer also considered and explicitly rejected Abele's arguments that Judge Farris allowed her courtroom to get out of control or otherwise provoked the interruption on September 28. He noted that Abele continued to interrupt the court and that Abele continued to yell—she even deliberately screamed in order to demonstrate what a real yell sounded like—"If you want me to tell you the difference between 'I'm going to jail', and (Yelling) I'm screaming, there's the difference. Now I'm screaming"—and stormed out of the courtroom while court was in session. Accordingly, the hearing officer rejected Abele's argument that her interruptions and behavior on September 28 were the result of "a rare emotional outburst."

Rather than present specific facts or argument as to why the hearing officer's findings are unsupported, many of Abele's challenges merely rehash the arguments already considered and rejected by the hearing officer and by the Board.

We hold that substantial evidence supports the hearing officer's findings that Abele's behavior was intentional. We adopt the hearing officer's conclusion that Abele's behavior violated RPC 3.4(c), 3.5(d), 8.4(d), and 8.4(j) and hold that count I is proved by a clear preponderance of the evidence.

B. *Count II*

We also uphold the hearing officer's conclusion that count II was proved by a clear preponderance of the evidence. The hearing officer found that Abele violated RPC 8.4(b)[9] (by violating RCW 9A.76.175), RPC 8.4(c),[10] and RPC 8.4(d) by

---

[9] RPC 8.4(b) provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[10] RPC 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

knowingly making a false and misleading statement to an officer of the SPD. RCW 9A.76.175 reads in part, "A person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor."

Abele argues that the WSBA cannot establish by a clear preponderance of the evidence that Abele had the subjective knowledge that Marshal Webb did not attempt to trip her. Therefore, she concludes that the WSBA cannot establish count II by a clear preponderance of the evidence because it cannot show that Abele knew that she was making a false statement to the SPD. In making these arguments, Abele challenges FF ¶¶ 37-39, ¶ 41, ¶¶ 43-44, and ¶ 48. However, she does not point to specific facts in the record that counter these findings; she simply takes exception to factual findings that her version of events was not credible and that she intentionally or knowingly filed the false report.[11] Abele does not challenge the findings that she continued to loudly engage Marshal Copeland after he made attempts to disengage from the situation, that she was the aggressor, that there was ample room for her to go around the marshals, or that she deliberately forced her way between the marshals. She also concedes that her statement was material and made to a public servant, satisfying elements of RCW 9A.76.175.

The Rules of Professional Conduct provide the standard for "knowing" behavior. RPC 1.0A provides in relevant part:

---

[11] Because Abele generally challenges these factual findings and does not make specific exceptions to specific factual findings, this opinion consolidates her challenges to the more general question of whether substantial evidence supports the hearing officer's determination that Abele "knowingly" filed a false police report.

(a) "Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.

. . . .

(f) "Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

. . . .

(i) "Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.

The hearing officer properly resolved this issue by making a permissible credibility determination. Abele argues that she did not knowingly file a false report because she believed that she was tripped. The WSBA argues that Abele knew that she wasn't tripped and that she invented the complaint because she wanted to get the marshals in trouble. It was up to the hearing officer to determine which version was more credible, and after considering all the evidence, he found that Abele's version of events was not credible and that the WSBA explanation was the only reasonable explanation.

We agree with the hearing officer. The hearing officer is allowed to evaluate direct and circumstantial evidence, including evaluations about the credibility of the witnesses, and draw reasonable inferences from that evidence. *Simmerly*, 174 Wn.2d at 988 (evaluations about witness credibility); *Cohen*, 149 Wn.2d at 332-33 (reasonable inferences). The hearing officer heard testimony from five witnesses on count II. Three witnesses, Marshal Webb, Marshal Copeland, and Officer Ritter, testified that Webb did not trip Abele. Another witness, Mr. Rakesh Pai, testified that

he was in the hallway during the incident and that he saw Webb trip Abele. However, his testimony also asserted that the tripping happened in a different area and that Abele grabbed a metal detector and security bar for support; neither of these objects was near the location where the incident occurred. The hearing officer found that his testimony was not credible.[12]

The hearing officer also watched the surveillance videos, which did not show Abele falling forward or lurching as she had described in her complaint to Officer Ritter. He considered Officer Ritter's report and Abele's testimony that she wanted one or both of the marshals to get in trouble and that "[w]hat I say to a cop has no meaning to me." He further considered and made uncontested findings of fact that Abele twice tried to confront Marshal Copeland, that she forced her way between the marshals, and that Abele was the aggressor.

---

[12] The hearing officer also heard testimony from Julie Herber. Abele argues that the hearing officer erred in excluding as hearsay Herber's testimony regarding a conversation that she had with Ms. Abele on May 16, 2011. Any error in this ruling was harmless: Abele's attorney laid additional foundation, and the hearing officer overruled a subsequent hearsay objection. The statements at issue were ultimately admitted and considered by the hearing officer.

Abele also asserts that the hearing officer's initial ruling that the statement was hearsay demonstrates that "he did not appreciate the relevance of the evidence to Abele's state of mind." She then combines this argument with an objection to FF ¶ 40, which states that the King County security video "does not support Respondent's claim she was tripped," to suggest that the hearing officer impermissibly shifted the burden of persuasion to Abele to prove that she had been tripped. However, this theory ignores the fact that Abele did not advance the argument below that this was a nonhearsay statement. Instead, counsel below asserted that he didn't think it was hearsay and that it "goes to excited utterance in any event." Given latitude by the hearing officer, Abele then proceeded to lay the foundation for an excited utterance objection to the hearsay rule. Ultimately, the hearing officer overruled the WSBA's hearsay objection and admitted the statements, noting that he wished to give counsel latitude. Abele does not provide citation or demonstrate how this impermissibly shifted the burden, and we do not address the argument further.

Abele attempts to demonstrate that the hearing officer's findings are not supported by substantial evidence by characterizing the findings as both "negative evidence" and "speculation." She further asserts that the video "is entirely inconclusive as to [her] *belief* that she was tripped." Both the hearing officer and the investigating police officer used the video in conjunction with witness testimony to evaluate the credibility of the parties. The hearing officer must consider all of the evidence presented and make a credibility determination as to the alternate explanation. *See Simmerly*, 174 Wn.2d at 982-83. He is also permitted to make reasonable inferences. *Cohen*, 149 Wn.2d at 332-33.

Here, the hearing officer could use the video to assess the witness' credibility. He could compare Abele's statement that she passed through the marshals because there was no room to go around with the video that clearly showed adequate space in the hallway. This credibility determination is contained at unchallenged FF ¶ 35 (despite ample room, Abele deliberately pushed between the marshals). He could use the video to watch Abele deliberately reengage with Copeland in the hallway after he had disengaged from her twice in an attempt to de-escalate the conflict; this information was also captured in an unchallenged finding of fact. He could also consider Abele's general hostility toward police officers, as evidenced by statements such as "I believe every cop lies in every report they ever write" and her answer of "what difference does it make what I say to a cop?" when asked, "[D]o you feel its ok to say things that aren't true to cops?" *See also* unchallenged FF ¶ 32 (Abele stating that "someone should fart in your face" to Copeland). The hearing officer was

permitted to consider all of this (unchallenged) evidence and draw reasonable inferences from Abele's behavior based on the totality of the circumstances.

The evidence presented during the four-day hearing allowed the hearing officer to make reasonable credibility determinations and infer that Abele knew that Marshal Webb did not trip her and that she knowingly made a false police report to get him into trouble. A lawyer's state of mind is a factual determination, and we give great weight to the hearing officer's determination because the hearing officer is in the best position to make these determinations. *Longacre*, 155 Wn.2d at 744. Here, substantial evidence supports the hearing officer's findings of fact and that these findings of fact support the conclusion that count II was proved by a clear preponderance of the evidence.

III.    Suspension Is the Appropriate Sanction

We also affirm the hearing officer's and unanimous Board's sanctions against Abele. The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 ed. & Supp. 1992) "govern lawyer sanctions in Washington." *Marshall*, 160 Wn.2d at 342. Based on these standards, we apply a three-step process to analyze a recommended sanction. *In re Disciplinary Proceeding Against Preszler*, 169 Wn.2d 1, 18, 232 P.3d 1118 (2010). First, we determine the presumptive sanction by analyzing "'the ethical duties violated, . . . the lawyer's mental state, and . . . the actual or potential injury caused by the lawyer's conduct.'" *Id.* (quoting *Marshall*, 160 Wn.2d at 342). Second, "we determine whether any aggravating or mitigating circumstances call for a departure from the presumptive sanction." *Id.* Third, if raised by the attorney being disciplined, "we evaluate the Board's recommended sanction based on '(1) [the]

proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board.'" *Id.* (quoting *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 764, 108 P.3d 761 (2005)).

We afford great deference to the Board's recommended sanction but retain the ultimate authority for determining the appropriate sanction for an attorney's misconduct. *In re Disciplinary Proceeding Against Wickersham*, 178 Wn.2d 653, 664, 310 P.3d 1237 (2013). We generally adopt the sanction recommended by a unanimous Board unless there is a clear reason for departure. *Id.* Abele argues (1) that substantial evidence does not support the hearing officer's finding that she acted intentionally or knowingly, (2) that the WSBA failed to prove two of the three aggravating factors found by the hearing officer, (3) that the hearing officer did not apply all applicable mitigating factors, and (4) that Abele's sanction is disproportionate given the circumstances of her case.

*A. Mental State for Count I*

Abele argues that substantial evidence does not support the hearing officer's finding that she acted intentionally or with knowledge as required to impose a suspension under *Standards* 6.22. She asserts that her conduct was negligent rather than knowing. This argument mirrors her argument that she didn't violate the applicable RPCs, as they require more than negligent conduct. As we noted in Part II.A of this opinion, Judge Farris found that Abele's behavior was "deliberate, willful, and in bad faith" in her unchallenged order of contempt. Additionally, our sufficiency analysis of count I upholds the hearing officer's finding that Abele's conduct was intentional.

20

*Standard* 6.22 reads:

Suspension is generally appropriate when a lawyer knows[13] that he or she is violating a court order or rule, and causes injury or potential injury to a client or party, or causes interference or potential interference with a legal proceeding.

*Standards* 6.22 applies to Abele's intentional conduct. We therefore adopt the recommendation and hold that suspension is the presumptive sanction for Abele's conduct under count I.

### B. Mental State for Count II

Abele argues that substantial evidence does not support the hearing officer's finding that she knowingly made a false or misleading report to the SPD in May 2011; she does not argue that suspension is not the appropriate standard for an attorney knowingly making a false or misleading police report, pursuant to *Standards* 5.12.[14] Because we hold that substantial evidence supports the hearing officer's finding that Abele knowingly made a false or misleading report to the SPD in May 2011, we also hold that suspension is the presumptive sanction for Abele's conduct under count II.

### C. Aggravating and Mitigating Factors

Aggravating or mitigating factors can alter the presumptive sanction but only if they are sufficiently compelling to justify a deviation. *Cohen*, 149 Wn.2d 323, 339. The

---

[13] The *ABA Standards* articulate a slightly different definition of "knowledge" than the RPCs. *Compare* STANDARDS at 17 ("'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."), *with* RPC 1.0A(f) ("'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."). Abele's intentional conduct satisfies the requirements of both definitions.
[14] *Standards* 5.12 reads, "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

21

hearing officer determined that three aggravating factors applied under *Standards* 9.22: (1) dishonest or selfish motive, (2) refusal to acknowledge the wrongful nature of conduct, and (3) substantial experience in the practice of law. The hearing officer found one mitigating factor under *Standards* 9.32: the absence of a prior disciplinary record. Though potentially applicable, the hearing officer did not apply an aggravating factor for multiple offenses. Abele does not challenge the applicability of the aggravating factor "substantial experience in the practice of law"; Abele was admitted to the bar and has been practicing since 2002.

Abele challenges the first two aggravating factors and argues that the hearing officer erred by failing to recognize the stress of litigation as an additional mitigating factor. Each of her challenges is specific to the presence of aggravating factors for count I, even though the hearing officer did not distinguish aggravating and mitigating factors between count I and count II. We hold that Abele acted with a dishonest or selfish motive and that she refused to acknowledge the wrongful nature of her conduct. We decline to add the mitigator of "personal or emotional problems—stress of litigation," requested by Abele, to her sanction analysis.

1.  Dishonest or Selfish Motive

As to count I, Abele challenges the application of the aggravating factor "dishonest or selfish motive" by incorporating her earlier argument that her mental state was merely negligent. The WSBA counters with citations to testimony from Judge Farris that Abele's repeated interruptions throughout the proceedings manifested numerous advantages for her case:

> And by doing it, she does gain advantages. It's a form of belligerent bullying by which she does get extra argument. She gets facts in the record that are not subject to cross-examination. She throws her opponents off because they are disrupted.

These assertions are supported by testimony from opposing counsel. The hearing officer is permitted to make reasonable inferences of motive. *In re Disciplinary Proceeding Against Dornay*, 160 Wn.2d 671, 684, 161 P.3d 333 (2007). We have already held that substantial evidence supports the finding that Abele's actions were intentional; substantial evidence also supports the aggravating factor of dishonest or selfish motive.

As to count II, the hearing officer found that Abele knowingly gave a false report to law enforcement personnel, motivated by her desire to get either Marshal Copeland or Marshal Webb in trouble by filing a complaint against one or both marshals. Because we hold that this finding is supported by substantial evidence and because Abele does not challenge the presence of any aggravating factor as to count II, we also find that the "dishonest or selfish motive" aggravating factor applies to count II.

2. Refusal To Acknowledge Wrongful Nature of Conduct

Abele also challenges the second aggravating factor, "refusal to acknowledge wrongful nature of conduct." STANDARDS 9.22(g). This aggravating factor is appropriate where a lawyer admits that she engaged in the alleged conduct but denies that it was wrongful or where she rationalizes the improper conduct as error. *In re Disciplinary Proceeding Against Ferguson*, 170 Wn.2d 916, 943-44, 246 P.3d 1236 (2011) (citing *In re Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 588-89, 173 P.3d 898 (2007)). We have also held that *Standards* 9.22(g) applies when the

attorney "'did not accept responsibility but sought to justify his conduct with explanations that were insufficient.'" *In re Disciplinary Proceeding Against Lopez*, 153 Wn.2d 570, 580, 106 P.3d 221 (2005).

The hearing officer reasonably concluded that *Standards* 9.22(g) applies here. Though Abele presented some evidence that she has acknowledged the wrongful nature of her conduct, her careful selection of statements and assertions ignores substantial evidence that she has not accepted responsibility for her conduct. Abele testified in her deposition, taken only four months before the hearing, that she didn't understand why the WSBA filed a complaint against her, that she didn't understand what she did wrong in front of Judge Farris, and that "there was nothing [she] could do to please [Judge Farris]." Her stated belief is that "Judge Farris found [her] in contempt because she didn't like [her]. . . . [T]hat [is the only reason]."

Abele's briefing also shifted blame for her misconduct to Judge Farris. The hearing officer specifically found that Abele's assertion that her outbursts were caused by a hearing disability was not credible, and he explicitly rejected her assertions that Judge Farris's behavior provoked her outburst. These factual findings are unchallenged. The hearing officer also found, and Abele does not challenge, that Abele's remaining excuses and explanations were not credible. We therefore reject Abele's contention that the aggravating factor "refusal to acknowledge wrongful nature of conduct" does not apply.

### 3. Stress of Litigation

Abele urges this court to apply the stress of litigation as a mitigating factor, citing *Dornay*, 160 Wn.2d at 687. In *Dornay*, the attorney lied under oath in order to protect an extramarital affair. *Id.* at 684. We acknowledged that "[t]he Washington Legislature and the courts of this state have recognized the profound impact of intimate partner violence" and held that the emotional problems associated with Dornay's relationship constituted a mitigating factor that merits substantial weight. *Id.* at 687.

We reject Abele's argument to apply the stress of litigation as a mitigating factor. Even acknowledging that Abele's misconduct under count I occurred during a contentious, 13-day trial that Judge Farris agreed "was stressful," Abele presents no argument that the stress associated with litigation is comparable to the stress of intimate partner violence that was a mitigator in *Dornay*. Applicable mitigators concerning issues of mental disability and personal or emotional problems (*Standards* 9.32(c)) are given varying degrees of weight depending on how greatly the factors contributed to the conduct. *Wickersham*, 178 Wn.2d at 673. However, Abele makes no attempt to show that the stress of trial caused her to misbehave throughout the proceedings, including during pretrial, or that these factors contributed to her misconduct alleged under count II. We decline to add the mitigator of "personal/emotional problems—stress of litigation" to Abele's sanction analysis.

### D. Proportionality

Finally, Abele argues that suspension for 12 months is not proportionate to her misconduct. "A six-month suspension is the accepted minimum term of suspension." *In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 774, 762, 82 P.3d 224

(2004). This minimum term suspension is warranted when "there are either no aggravating factors and at least some mitigating factors, or where the mitigating factors clearly outweigh any aggravating factors." *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 497, 998 P.2d 833 (2000). In considering a proportionality argument, we generally do not depart from the Board's recommendation. However, we will do so "if we are persuaded that the sanction is inappropriate in light of the (1) disproportionality of the sanction to the misconduct or (2) the extent of disagreement among the members of the Board."[15] *Jackson*, 180 Wn.2d at 238 (citing *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 259, 66 P.3d 1057 (2003)).

Here, there is no disagreement among the members of the Board: the Board was unanimous that Abele should be suspended for one year. We give this unanimous recommendation great deference. *In re Disciplinary Proceeding Against Day*, 162 Wn.2d 527, 538, 542, 173 P.3d 915 (2007).

Abele's count I contempt violation is clear and egregious. Judges have a responsibility to maintain order in their courtroom; when the judge has to resort to issuing an order of contempt in order to secure compliance with a court order, the attorney's behavior is clearly over the line. Abele does not provide us with a compelling reason to reject the recommended suspension. We therefore adopt the Board's recommendation and hold that a one-year suspension is warranted under these facts.

---

[15] We may also depart from the Board's recommendation if we find that our weighing of aggravating and mitigating factors differs from the Board's. *See In re Disciplinary Proceeding Against Perez-Pena*, 161 Wn.2d 820, 837, 168 P.3d 408 (2007). Because that is not the case here, we do not depart from the Board's recommendation.

CONCLUSION

Abele knowingly committed the acts of misconduct alleged in counts I and II in violation of RPC 3.4(c), 3.5(d), 8.4(b), 8.4(c), and 8.4(j). The hearing officer found these violations, and Abele's violation of RPC 8.4(d), by a clear preponderance of the evidence. The presumptive sanction for a knowing violation of these rules is suspension. We therefore adopt the Board's recommendation in full and order that Abele be suspended from the practice of law for one year, that she complete an evaluation to determine her fitness to practice prior to being reinstated to the practice of law, and that she pay all costs and expenses, including attorney fees awardable under the ELC 13.9.

_____
Wiggins, J.

WE CONCUR.

Madsen, C.J.                    Stephens, J.
_____    _____

_____    González, J.
_____

Owens, J.                    Gordon McCloud, J.
_____    _____

Fairhurst, J.                    Yu, J.
_____    _____