IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-597

Filed 18 February 2026

Disciplinary Hearing Commission, No. 21DHC23

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

MARK A. KEY, Attorney, Defendant.

Appeal by Plaintiff from order entered 27 February 2025 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 29 January 2026.

> *The North Carolina State Bar, by Counsel Carmen H. Bannon and Deputy Counsel Savannah P. McLamb, for Plaintiff-Appellant.*
>
> *Mark A. Key, Pro se, for Defendant-Appellee.*

COLLINS, Judge.

The North Carolina State Bar ("Plaintiff") appeals from an order of discipline entered on remand by the Disciplinary Hearing Commission of the North Carolina State Bar ("DHC"), which suspended Mark Key ("Defendant") from practicing law for five years and allowed him to seek a stay of the balance of the suspension after three years if he complies with certain conditions. Plaintiff argues that the DHC abused its discretion by suspending, rather than disbarring, Defendant. For the reasons stated below, we affirm.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

A detailed summary of the procedural and factual background underlying this appeal is set forth in *N.C. State Bar v. Key*, 294 N.C. App. 372 (2024).  In *Key*, we held that the DHC did not err by finding in its original order of discipline that Defendant engaged in a pattern of misconduct and concluding that Defendant violated the Rules of Professional Conduct.  294 N.C. App. at 381-409.  However, we held that the DHC erred by failing to consider Defendant's commission of multiple felonies and bad faith obstruction of the disciplinary process in imposing discipline.  *Id.* at 413-16.  We therefore vacated the portion of the order of discipline suspending Defendant's law license and remanded for further proceedings.  *Id.* at 419.

Following a two-day hearing on remand, the DHC entered a new disciplinary order that incorporated substantially the same findings regarding the underlying misconduct, along with additional findings, including:

> 17. Defendant's law license was suspended pursuant to the original Order of Discipline in this case on 24 March 2023, and remained suspended until the Court of Appeals' mandate vacating the discipline was issued on 8 July 2024. During that period of suspension, Defendant failed to comply with the conditions set forth in the original order of discipline:
>
>> a.  Defendant did not file with the DHC the required affidavit indicating that he properly wound down his law practice in compliance with 27 N.C.A.C. § .0128.
>>
>> b.   Defendant did not pay the costs and administrative fees of the disciplinary action within 30 days after being served with the

statement of costs and fees.

c. Defendant continued to hold himself out as an attorney by sending emails identifying himself as "Attorney at Law" over a signature block indicating his affiliation with "The Key Law Office."

d. Defendant failed to respond to notices of six fee dispute petitions filed by former clients with the North Carolina State Bar.

e. Defendant failed to timely return a client's file, despite repeated requests to do so.

f. Defendant did not comply with multiple conditions in the original order of discipline requiring him to provide to the State Bar's Office of Counsel his income tax returns, proof of extensions for filing tax returns, proof of payment of taxes, all correspondence with tax authorities.

g. Defendant did not execute NC DOR Forms 93 authorizing the Office of Counsel to obtain records relating to Defendant's State income taxes for the preceding year.

In accordance with our prior opinion, the DHC considered, inter alia, Defendant's commission of multiple felonies and bad faith obstruction of the disciplinary process and ultimately imposed the same discipline as in its original order.[1] Plaintiff appealed.

## II. DISCUSSION

The crux of Plaintiff's argument is that the DHC abused its discretion by

---

[1] Although the new order of discipline does not include bad faith obstruction of justice among the factors considered, the DHC chairman explicitly noted during the hearing that the panel considered this factor in determining the appropriate discipline.

suspending, rather than disbarring, Defendant.

There are two phases in an attorney disciplinary case: "(1) an adjudicatory phase in which the DHC determines whether the defendant committed the misconduct; and (2) a disposition phase in which the DHC determines the appropriate discipline." *N.C. State Bar v. Adams*, 239 N.C. App. 489, 493 (2015) (citation omitted). Our Supreme Court has emphasized that the whole record test applies in our review of attorney discipline cases and has expressly disavowed the notion that this examination includes a proportionality review. *N.C. State Bar v. Talford*, 356 N.C. 626, 641 n.4 (2003). In applying the whole record test, we determine whether the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether those findings of fact support the DHC's conclusions of law. *Id.* at 632. "Such supporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion." *Id.* (citation omitted).

The whole record test "also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn." *N.C. State Bar v. Demayo*, 292 N.C. App. 435, 439 (2024). To satisfy the evidentiary requirements of the whole record test in an attorney disciplinary action, "the evidence used by the DHC to support its findings and conclusions must rise to the standard of clear, cogent, and convincing." *N.C. State Bar v. Megaro*, 286 N.C. App. 364, 372 (2022) (citation omitted). Clear, cogent, and convincing "describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent

than proof beyond a reasonable doubt." *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 354 (1985) (citation omitted). "It has been defined as evidence which should fully convince." *Id.* (quotation marks and citation omitted).

The whole record test must be applied separately to the adjudicatory phase and the disposition phase. *Megaro*, 286 N.C. App. at 372. We undertake a three-part inquiry to determine whether the DHC's decision has a rational basis in the evidence under the whole record test: "(1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?" *Talford*, 356 N.C. at 634. Plaintiff does not challenge any aspects of the adjudicatory phase, and we thus limit our review to the DHC's determination of the appropriate sanction for his misconduct.

"We review the DHC's imposition of sanctions for an abuse of discretion." *N.C. State Bar v. Merritt*, 285 N.C. App. 534, 554 (2022) (citation omitted). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Adams*, 239 N.C. App. at 493 (quotation marks and citation omitted).

Here, the order of discipline sets out findings of fact regarding discipline, including:

> 2. Defendant has significant experience in the practice of

law, as he has been a licensed attorney for 25 years.

3. The failure to comply with tax obligations described herein is part of a pattern of misconduct: The tax liens of record against Defendant reflect that he was also delinquent in paying personal income taxes in 1998, 2000, 2001, 2003, 2004, 2005, 2006, 2008, and 2010.

4. Defendant's refusal to pay Zephir's income taxes as promised caused significant harm to Zephir: It was a financial hardship for her to pay the taxes that Defendant had agreed to be responsible for, and she had to travel to North Carolina from out of state to pursue legal action against Defendant.

. . . .

7. Both the prosecutor and the presiding judge in the Langley case testified that they had never seen courtroom conduct by a lawyer that was as aggressive and disrespectful as Defendant's conduct during the Langley trial. . . .

8. Defendant acted with selfish and dishonest motive when he knowingly provided false information and false documentation to Navy Federal in connection with his mortgage loan application.

9. . . . Defendant was only partially cooperative with the State Bar's investigation of his misconduct, made false statements in response to State Bar inquiries, and gave testimony before the DHC that was not credible. . . .

. . . .

11. Senior Resident Superior Court Judge Winston Gilchrist testified that Defendant was a valued member of the Harnett County Bar and provided legal services to many indigent defendants in criminal matters. Judge Gilchrist also testified that Defendant served a unique and valuable role in his representation of a particular subset of that County's population. Judge Gilchrist also testified that although he had many interactions with Defendant during Defendant's years of practice (both as opposing counsel and as a judge), he never observed Defendant

engage in inappropriate courtroom conduct. . . .

12.  Defendant is an effective criminal defense lawyer and can be an asset to clients in that role.

13.  Defendant has assisted those less fortunate in his community, and the best version of Defendant is a positive lawyer role model for young men.

14.  Defendant experienced several major stressors during part of the time during which his misconduct occurred:  In September 2019, one of Defendant's sisters died.  In January 2020, another of Defendant's sisters died.  In January 2021, Defendant's brother suffered serious injuries and has been substantially if not entirely dependent upon Defendant since that time.

15.  Defendant has a history of professional discipline and criminal convictions . . . .

16.  Defendant has not fully acknowledged that he violated the Rules of Professional Conduct, instead conceding some "technical" violations, and has been slow to express any remorse.

. . . .

18.  During his testimony in the November 2024 hearing, Defendant characterized State Bar employees as liars, criticized the original members of the DHC Hearing Panel, and accused the Court of Appeals judges who rendered the opinion in this case of unethical conduct.  This testimony indicates that Defendant continues to minimize responsibility for his actions, deflect blame, and attribute his situation to others' purported malfeasance rather than his own.

Based on these findings, the DHC concluded that the following factors listed in 27 N.C. Admin. Code 1B.0116(f)(1), which are to be considered in imposing suspension or disbarment, were applicable:

(a)  circumstances reflecting the Defendant's lack of honesty, trustworthiness, or integrity;

(b) negative impact of Defendant's actions on clients or the public's perception of the profession;

(c) negative impact of the Defendant's actions on the administration of justice;

(d) effect of the Defendant's conduct on third parties; and

(e) acts of dishonesty, misrepresentation, deceit, or fabrication.

The DHC also concluded that several factors listed in 27 N.C. Admin. Code 1B.0116(f)(2), which require consideration of disbarment, were present, including: acts of dishonesty, misrepresentation, deceit, or fabrication; impulsive acts of dishonesty, misrepresentation, deceit, or fabrication without timely remedial efforts; commission of multiple felonies; and bad faith obstruction of the disciplinary process.

The DHC finally concluded that the following factors from 27 N.C. Admin. Code 1B.0116(f)(3), which are to be considered in all disciplinary cases, were present:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) indifference to making restitution;

(d) a pattern of misconduct;

(e) multiple offenses;

(f) effect of any personal or emotional problems on the conduct in question;

(g) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(h) refusal to acknowledge wrongful nature of conduct;

(i) character or reputation;

(j) vulnerability of victim; and

(k) degree of experience in the practice of law.

The DHC then made the following relevant conclusions regarding discipline:

> 6. Defendant has a successful criminal defense practice where Defendant has represented many indigent clients and has been a valuable member of the defense bar in not only representing indigents but giving them a complete defense.
>
> 7. Defendant has received prior discipline, but Defendant's prior discipline has not been a deterrent.
>
> 8. The Hearing Panel concludes that by complying with the conditions placed on Defendant by the original panel, Defendant could be a contributing member of the legal community he has served. The original panel concluded that, should Defendant satisfy all of the conditions contained in its order, he should have an opportunity to be a contributing member of the legal community, and this Hearing Panel, which is additionally charged with following the COA mandate, concludes that Defendant should retain an opportunity to return to the practice of law in the future.
>
> 9. Defendant experienced significant loss in his personal life during the period wherein the alleged misconduct occurred. . . .

After considering all forms of discipline available, the DHC concluded that "admonition, reprimand, or censure would not be sufficient discipline because of the gravity of the harm and potential harm to the public, clients, the administration of justice, and the profession in the present case[,]" and that "a five-year suspension of Defendant's license to practice law, with an opportunity after three years to seek a stay of the remainder of the suspension upon compliance with conditions, is the appropriate discipline in this case."

By expressly setting forth its reasoning for imposing suspension rather than disbarment, the record shows that the DHC weighed the factors listed in 27 N.C. Admin. Code 1B.0116(f) in determining the appropriate discipline. We disagree with the DHC's decision not to disbar Defendant and invite the Supreme Court's review, but we cannot say that the DHC's evaluation of those factors was manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *Adams*, 239 N.C. App. at 493. Accordingly, the DHC did not abuse its discretion by suspending, rather than disbarring, Defendant.

## III.  CONCLUSION

For the foregoing reasons, we affirm the DHC's order suspending Defendant from practicing law.

AFFIRMED.

Judge FLOOD concurs.

Judge MURRY concurs by separate opinion.

No. COA25-597 – N.C. State Bar v. Key

MURRY, Judge, concurring.

I concur in this opinion because it correctly acknowledges the broad discretion afforded to the DHC in its adjudicational and dispositional application of the whole-record test as a matter of law. *Accord N.C. State Bar v. DeMayo*, 292 N.C. App. 435, 439 (2024). But discernment accompanies that discretion, and in this respect I believe "the consequence here should be more than mere finger wagging." *In re Kimble*, 387 N.C. 462, 474 (2025) (Berger, J., concurring).

The record below fully documents the DHC's consideration of whether to rescind Defendant's law license; however, I struggle to comprehend how its allowance of a lifeline back into the State Bar and the practice of law does not contradict our profession's aspiration to self-regulation. Defendant here is credibly accused of offenses so baldly sanctionable that a typical lawyer only encounters them in a legal-ethics casebook, *e.g.*, Lisa G. Lerman, Philip G. Schrag, & Robert Rubinson, *Ethical Problems in the Practice of Law* (Aspen Casebook Sers., 5th ed. 2020), to wit[2]:

(1) Underpaying (and even concealing) income taxes owed under State and Federal law over several years, *cf. id.* at 101–02 (citing *In re Walker*, 597 N.E.2d 1271, *modified*, 601 N.E.2d 327 (Ind. 1992)) ("disallowing practice by unfit lawyer[ ]" based on "criminal act . . . that reflects dishonesty");

(2) Commingling trust and personal funds without any bookkeeping, *cf. id.* at 552 n.151 (citing *In re O'Hagan*, 450 N.W.2d 571 (Minn. 1990) (disbarring lawyer for "possessi[ng] funds that belonged to his client [but] neither notif[ying] client nor distribut[ing] funds" (ellipses omitted));

(3) Disclosing confidential client information to an unrelated third party *qua* representative without permission, *cf. id.* at 251 (citing *In re Lehman*, 3

---

[2] As the majority notes, a fuller recitation of these offenses can be found in our previous encounter with Defendant. *See N.C. State Bar v. Key*, 294 N.C. App. 372, 375–80 (2024).

> N.E.3d 536 (Ind. 2014) (suspending lawyer for two years based on confidential disclosures "that evidenced lack of competence and diligence");
>
> (4) Disrupting the proceedings of his then-client's criminal trial so extensively as to merit a mistrial, *cf. id.* at 699 (citing *In re Abele*, 184 Wash. 2d 1 (2015) ("suspend[ing] from practice for a year" a lawyer who "often got angry in court when things did[ not] go [her] way"); and
>
> (5) Committing *mortgage fraud* to purchase his ex-girlfriend's house without her knowledge, *cf. id.* at 760 (citing *In re Sargent*, No. BD-2013-061 (Sup. Jud. Ct. Suffolk Cnty., Mass. 2013) (suspending Dean from legal practice for three years for "submit[ing] inflated LSAT scores and [GPAs] . . . to increase" his law school's *U.S. News & World Report* rankings).

Standing alone, any one of these offenses plausibly merits punishment short of disbarment. But taken together, they illustrate a pattern of conduct MPRE compilers would reject as too fanciful for a practice exam.

The legal profession's legitimacy rests on the public's trust in our ability to both police our own and expel bad actors. *Contra, e.g., N.C. State Bar v. Ford*, No. 94 DHC 4, at 7–8 (N.C. Discply. Hear'g Comm'n 1994) (disbarring lawyer for "failing to preserve and maintain [clients'] funds," "failing to pay . . . 1991 county taxes," and "failing to adequately supervise" employees). I agree with the majority's abuse-of-discretion analysis as a matter of law and thus concur in its opinion. But I am nonetheless disappointed with the DHC's decision to give Defendant a second

(fourth?[3]) chance he does not deserve. He should reflect on that fact as he works to

repair the damage of his actions to date.

---

[3] *See generally N.C State Bar v. Key*, No. 02 DHC 22 (N.C. Discply. Hear'g Comm'n 2002) (first suspension); *N.C. State Bar v. Key*, No. 10 DHC 12 (N.C. Discply. Hear'g Comm'n 2010) (first censure); *In re Key*, No. 21 G 124 (N.C. Grievance Comm. 2021) (second censure).